[Cite as *State v. Stidum*, 2026-Ohio-2975.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY

|                          |   |                              |
|--------------------------|---|------------------------------|
| STATE OF OHIO,           | : |                              |
|                          |   | CASE NO. CA2025-10-025       |
| Appellee,                | : |                              |
|                          |   | OPINION AND                  |
| vs.                      | : | JUDGMENT ENTRY               |
|                          |   | 8/3/2026                     |
| KADERIOUS STIDUM,        | : |                              |
|                          |   |                              |
| Appellant.               | : |                              |
|                          |   |                              |
|                          | : |                              |

CRIMINAL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CRI20250056

Nicholas A. Adkins, Madison County Prosecuting Attorney, and Michael S. Klamo, Assistant Prosecuting Attorney, for appellee.

Shannon M. Treynor, for appellant.

# **O P I N I O N**

**SIEBERT, J.**

{¶ 1} This appeal stems from a Facebook Marketplace listing and a related sale of jewelry that the State alleged turned into a robbery at gunpoint. The State presented its case, including testimony from the victim of the robbery which identified Kaderious Stidum as the person who robbed him, a detailed description of the gun used during the

robbery, pictures of Stidum with the stolen jewelry, and a recorded phone call from prison in which Stidum stated "I'd robbed that Nigga again" or "I would—I would rob that Nigga again." Stidum's defense counsel challenged the State's evidence, arguing the victim fabricated his story, and Stidum would have to be "extremely dumb or very brazen" to commit the robbery in the manner described by the State.

{¶ 2}   A jury heard and considered the State's evidence and Stidum's defense, returned a guilty verdict against Stidum for aggravated robbery with a firearm specification, and the trial court entered his conviction and sentenced him to prison. But Stidum now challenges his conviction on appeal, arguing the State did not support its case against him with sufficient evidence and his conviction was against the manifest weight of the evidence.

{¶ 3}   After review, we find Stidum's challenges to be without legal merit. The jury simply believed the State's witnesses and credited the overwhelming evidence it presented of Stidum's guilt, while rejecting the theory of Stidum's defense. Accordingly, we affirm the judgment of the trial court.

**Facts and Procedural History**

{¶ 4}   In April 2025, Jacob Payne ("Jake") listed two necklaces for sale on Facebook Marketplace. Several days later, Stidum, using the Facebook profile "Kutthroat Beezy," contacted Jake about the jewelry. After exchanging messages, the parties agreed that Stidum would purchase both necklaces for $450 and meet Jake at his apartment the following day to complete the transaction.

{¶ 5}   At approximately noon on April 25, 2025, Stidum arrived at Jake's apartment. The two met in Jake's front yard, where they discussed the necklaces and other topics. As the conversation continued, Stidum repeatedly mentioned his vehicle, prompting Jake to offer to show him his own car, on which he had recently completed

repairs. Jake sat in the driver's seat while Stidum opened the passenger-side door. Rather than entering the vehicle, however, Stidum pointed a handgun at Jake. Stidum then removed the phone from Jake's pocket and warned that he would put "bullets" in Jake's car if he moved. Jake testified that he observed the firearm at close range and described it as a gray revolver loaded with orange-tipped ammunition. Stidum then fled with both necklaces and Jake's cell phone.

{¶ 6} Jake immediately borrowed a neighbor's phone and contacted the London Police Department. He identified the perpetrator by the Facebook profile "Kutthroat Beezy." Officer Michael Combs investigated the robbery and determined that Stidum used that Facebook profile.

{¶ 7} Pursuant to department policy, Officer Combs arranged a photo lineup, which Officer Derrick Haddox, who was not involved in the investigation, administered.[1] Jake immediately identified Stidum as the perpetrator and testified that he was "100 percent" certain of the identification. Officer Combs also showed Jake a stock photograph of a handgun matching the description Jake had provided, and Jake confirmed that it closely resembled the firearm used during the robbery.

{¶ 8} Law enforcement later located and arrested Stidum with the assistance of the Columbus Police Department and its SWAT team. Officers recovered a firearm (a silver revolver) and a cell phone concealed on his person. Although investigators were unable to perform a forensic extraction of the phone because of updated iPhone security protocols, Officer Combs manually reviewed its contents. The phone contained a photograph, taken the day before the robbery, depicting a silver revolver loaded with orange-tipped ammunition consistent with Jake's description of the weapon. Additional

---

1. The testimony established that this is done intentionally so as not to provide any suggestion of identification to the identifying party.

photographs taken the evening of the robbery showed Stidum wearing clothing consistent with Jake's description of the perpetrator displaying the stolen necklaces. Another photograph depicted a child wearing those necklaces.

{¶ 9} The State also introduced a recorded jail telephone call made while Stidum was awaiting trial. During the call, Stidum stated, "I'd robbed that Nigga again" or "I would—I would rob that Nigga again."

{¶ 10} A Madison County Grand Jury subsequently indicted Stidum on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), with a firearm specification.[2] Following a jury trial, Stidum was found guilty and sentenced to an indefinite prison term of nine to 12 years. Stidum now appeals, raising a single assignment of error for review.

**Assignment of Error**

{¶ 11} In his sole assignment of error, Stidum argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence.

{¶ 12} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Kepler*, 2026-Ohio-223, ¶ 23 (12th Dist.). The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.).

{¶ 13} A manifest-weight challenge, by contrast, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine

---

2. Stidum was also indicted on another count of robbery; however, that charge was later dismissed.

whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.).

{¶ 14} As this court has repeatedly recognized, a determination that a conviction is supported by the manifest weight of the evidence is also dispositive of a sufficiency challenge. *State v. Whitt*, 2018-Ohio-1257, ¶ 13 (12th Dist.).

{¶ 15} Stidum was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which provides that no person, while attempting or committing a theft offense, shall have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate possession of it, or use it. He was also convicted of the accompanying three-year firearm specification under R.C. 2941.145(A).

{¶ 16} On appeal, Stidum primarily challenges the credibility of Jake's testimony. He argues that portions of Jake's account were implausible, that the State failed to present reliable evidence establishing the use of a firearm, and that juror questions during deliberations demonstrated uncertainty concerning Jake's credibility.

{¶ 17} After thoroughly reviewing the record, we find no merit to these arguments. Although framed as challenges to both the sufficiency and weight of the evidence, Stidum's claims primarily concern witness credibility and the weight the jury chose to assign to the evidence presented at trial. In considering such claims, an appellate court must remain mindful that the jury, as the trier of fact, was in the best position to evaluate witness credibility and resolve conflicts in the testimony. *State v. Bostick*, 2022-Ohio-

4228, ¶ 14 (12th Dist.). A conviction should be reversed on manifest-weight grounds only in the exceptional case where the evidence weighs heavily against conviction. *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). Moreover, a conviction is not against the manifest weight of the evidence merely because the jury chose to believe the State's witnesses. *State v. Brock*, 2026-Ohio-2036, ¶ 46 (12th Dist.).

{¶ 18} Substantial evidence supported Stidum's conviction. Jake testified that he arranged to sell two necklaces through Facebook Marketplace to an individual using the profile name "Kutthroat Beezy." After meeting Jake at his apartment under the guise of purchasing the necklaces, Stidum examined the jewelry, pointed a gun at Jake, demanded his cell phone, threatened to shoot Jake if he moved, and fled with both the necklaces and the phone. Jake had an extended opportunity to observe Stidum during their face-to-face encounter that occurred in broad daylight. Shortly after the robbery, Jake identified the perpetrator by his Facebook profile name and later positively identified Stidum in a photo lineup, testifying that he was "100 percent" certain of his identification.

{¶ 19} The State corroborated Jake's testimony with a substantial amount of other evidence. For example, at the time of Stidum's arrest, officers recovered both a firearm (a silver revolver) and a cell phone from his person. A review of the phone revealed several photographs. One photograph, taken the day before the robbery, depicted the silver revolver loaded with orange-tipped ammunition—matching Jake's detailed description of the weapon used during the offense. Officers also discovered photographs taken on the evening of the robbery showing Stidum wearing clothing consistent with Jake's description, including the same red hat, while displaying the necklaces stolen from Jake. Another photograph depicted a child wearing those same necklaces. The State also introduced the recorded jail telephone call in which Stidum stated, "I'd robbed that Nigga again" or "I would—I would rob that Nigga again."

{¶ 20} In his assignment of error, Stidum argues that the jury "struggled" with Jake's credibility and points to defense theories advanced at trial in support of that claim. Stidum's trial counsel suggested that Jake fabricated the robbery after completing the transaction. Under the defense's theory, Stidum purchased the necklaces, returned home, and was later falsely accused of aggravated robbery by a dissatisfied seller.

{¶ 21} Stidum's trial counsel further argued that Stidum would not have committed the offense in the manner described by Jake because he met Jake in broad daylight, displayed distinctive tattoos, and voluntarily shared personal information during their encounter. Counsel maintained that, for Jake's account to be true, Stidum would have had to be either "extremely dumb or very brazen" to commit the offense under such circumstances.

{¶ 22} The jury, however, was free to reject that theory. The argument rests largely on speculation about how a reasonable person would be expected to commit a robbery and does not undermine the substantial evidence of Stidum's guilt. *See State v. Sheldon*, 2023-Ohio-2998, ¶¶ 30-31 (12th Dist.) (rejecting a similar argument inviting the court to infer the defendant was unaware of contraband because it was easily discoverable). The fact that a criminal act may have been committed in a manner that later appears to be imprudent does not render the evidence supporting the conviction less credible. In any event, this court will not substitute our judgment for that of the trier of fact where the record supports its determination.

{¶ 23} We are likewise unpersuaded by Stidum's reliance on the jury's questions as support for his contention that the jury was uncertain about Jake's credibility. During deliberations, the jury asked whether it could review the police report containing Jake's written statement, Officer Comb's body cam footage from his initial interaction with Jake, and the court reporter's transcript or notes of Officer Comb's testimony. The trial court

responded that neither the police report nor the body cam footage had been admitted into evidence. The court further advised the jury that a transcript of Officer Comb's testimony was not immediately available. Juror questions are not unusual and do not, by themselves, demonstrate confusion or uncertainty. Rather, they reflect that the jurors were carefully considering the evidence and fulfilling their responsibilities. Nothing about the questions suggests that the jury lost its way. *See State v. Wood*, 2020-Ohio-4895, ¶ 40 (10th Dist.).

{¶ 24} Finally, we reject Stidum's argument that the State failed to prove he used a firearm. Jake testified that Stidum pointed a revolver directly at him, described the weapon in detail, and later identified a photograph of a handgun that closely resembled the firearm used during the robbery. In addition, the photograph recovered from Stidum's phone depicting a revolving loaded with orange-tipped ammunition corroborated Jake's description.

{¶ 25} Having reviewed the entire record, weighed the evidence and all reasonable inferences, and considered the credibility of the witnesses, we conclude that this is not the exceptional case in which the evidence weighs heavily against conviction. The jury did not clearly lose its way or create a manifest miscarriage of justice in finding Stidum guilty of aggravated robbery and the accompanying firearm specification. Because the conviction is supported by the manifest weight of the evidence, it is necessarily supported by sufficient evidence as well. *State v. Young*, 2018-Ohio-701, ¶ 59 (12th Dist.).

{¶ 26} Stidum's sole assignment of error is overruled.

{¶ 27} Judgment affirmed.

PIPER, P.J., and M. POWELL, J., concur.

- 9 -

## __J U D G M E N T   E N T R Y__

The assignment of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Madison County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

*/s/ Robin N. Piper, Presiding Judge*

*/s/ Mike Powell, Judge*

*/s/ Melena S. Siebert, Judge*